Mr. Tobin, good morning. Good morning, Your Honor. Please proceed. Thank you. Your Honor, this case, there are three reasons to vacate and remand this case. One, it's a 12 v. 6 motion, and the court improperly decided to make findings of facts, when it failed to Second one, we expressly reserved our rights to litigate validity, infringement, and enforceability of patents. Third, we did not. Well, when you say expressly, it's a little hard for me to follow how you can characterize it as expressly, because when I read the license agreement, there isn't any express reservation of a right to sue. There's simply an argument you're making based on the word any. That's, well, two things there, Your Honor. It was a 12 v. 6 motion, which states, is there any, the real standard here under 12 v. 6 is without doubt. I'm just asking you, how can you say that the right to sue is expressly reserved? What language expressly reserves it, other than an argument that you make from the appearance of the word any? It's beyond that. There was no, there was, there was a reservation that if the patents were declared invalid, that the right to, the requirement to pay royalties would cease, and that was a reservation. But is that what you're calling the express reservation of the right to revive the lawsuit? We're saying that's the combination of that document with the release, which said except for what's ever in the license agreement. We have not conceded unity. There's no concession of infringement. The consent decree is silent on that. And when you put all the documents together, we say there is an express reservation of right, of right to contest. You know, if you had said there's an implied reservation, I maybe could deal with that. But when you say there's an express reservation of the right to sue, that just makes a mockery of the word express. An express reservation of the right to sue would be language like, we expressly reserve the right to sue, despite the settlement of the complaint in this case, or some such language. Your Honor, we submit that there is no jurisprudence from this court that you have to say those exact words, that we expressly reserve the right to contest validity. All of the cases that have been decided under res judicata, on express reservation, all have had in them, one, a concession of validity and infringement. Two, they all came up under developed records, summary judgment, preliminary injunction, etc. We go back to 12b-6. We put forth a reasonable argument that there was a reservation. Wasn't the invalidity claim dismissed with prejudice? The invalidity claim, there was a dismissal with prejudice, Your Honor. And that included that claim, right? That's correct. But there was a settlement agreement, which said subject, except for the obligations, etc., in the license agreement. And in the license agreement, there was a clause that said, if the patents are declared invalid in any case, it did not say third party. I'm sorry. Correct. Unless there's a reservation. Right. That's correct. In terms of reading these documents together, it strikes me that it's very difficult to explain why the parties would have agreed to a dismissal with prejudice and only have effectively said that it's really without prejudice, which is what you're saying, by virtue of looking all the way into the license agreement and finding a clause that relates to the invalidation of the patent. I mean, isn't it a much more reasonable conclusion to draw from the dismissal of this action with prejudice that the rights of the parties have been terminated in connection with this lawsuit and any other lawsuits with the same relief, subject to the patent being invalidated in some other proceeding, administrative or judicial, not involving these party vendors, say so. Your Honor, you said a more reasonable. But the criteria here under 12b-6, and basically what you're saying is what was the intentions of the parties. When you're in 12b-6, perhaps that is a more reasonable. I'm not going to concede it. But there was also a reasonable interpretation that the parties in settling the suit reserved for themselves the right to contest validity infringement and enforceability. Are you prepared to introduce parole evidence, for example, on this question? Whatever we're entitled, Your Honor, to have that opportunity in the court below. What the court did was take a 12b-6 on the complaint and dismiss it. Did you make any proper of the kind of proof that you would offer? Both parties, Your Honor, down below said if the court turns this into a summary judgment motion in 56, both parties wanted to supplement. So the answer is we don't know what you wanted to introduce. That's correct. Let me ask you a related but different question. If I understand the settlement agreement, it relates to both the so-called isobutene and the perforation patents. That's correct. And other patents. Yeah. But those two are important because the perforation patents are the issue here right now. My understanding is the isobutene patent has been held invalid, that we have affirmed that, and that the result of that, I assume, is that royalties are no longer being paid under this agreement with respect to the isobutene patent. That's correct. That's correct. Actually, there's no royalties being paid under any of the patents. Right. And the isobutene litigation didn't involve your client, right? That's correct. After the settlement. Okay. So you have 1286, the court improperly made, they determined the intent of Dow, which goes beyond what they should have done here. They said Dow never would have entered into the agreement if there was an express reservation or a reservation of rights. When you say they, are you referring to the district court? Yes, that's correct. I'm sorry. The district court found in its decision that they, Dow, would not have entered into the agreement if Pactiv had reserved the rights to contest the limit. That was beyond what they had the ability to do. In effect, the court turned it into a Rule 56 motion, which was improper. So the court here should vacate and remand for development of the issue as to whether or not there was an express reservation. Is it a threshold requirement that we would have to first find that the two interrelated agreements are ambiguous? No, Your Honor. If you're looking at the 1286 issue. Yeah, that's what I'm looking at. All you would have to do is determine that the court, in effect, went beyond what it should have done under 1286. If we concluded that the two agreements unambiguously ended infringement and validity, then what would be wrong with the 1286 dismissal? I think, Your Honor, I don't believe that. I know you don't agree that that would be a fair assessment. But assuming that we so concluded, wouldn't we necessarily have to say, therefore, 1286 dismissal was appropriate? Then, Your Honor, you, in effect, are making findings based upon an undeveloped record also. You're taking the record below, which was the complaint and the settlement agreement, et cetera, and you're concluding— No, no, and the dismissal by the court with prejudice. That's correct. And we don't believe that's proper under 1286. Well, I don't understand that. I mean, construction of contracts is a matter of law unless they're ambiguous. So if we conclude this is not ambiguous, why aren't we in a position in a 1286 context to construe the contract and decide what it means as a matter of law? Because—well, there's three points here. But on that point, if Your Honor determines that the contract was not ambiguous and that the settlement agreement, et cetera, was not ambiguous, then obviously you can do that. Okay. So you have to—your contention must be either that it's a matter of law, we should construe it the other way, or that it's ambiguous in your top-down hearing. That's correct, Your Honor. Or under 12B-6, which was the standard below, the court could not do that without developing the record. In effect, what you had was the court determining, based upon the documents we've heard, that there was no way beyond doubt that the plaintiff could sustain its case. And that's the Connolly standard from the Supreme Court. And that's improper. We put forth, in our view, a reasonable interpretation of that agreement, of those agreements. And therefore, we were entitled to go forward. Let me ask you a question on a different subject. Looking to the question of jurisdiction, I take it that, in this case, you sought a declaratory judgment in order to provide an anticipatory defense against a suit on the contract, correct? Not a suit for infringement. That's probably correct. And they wouldn't have sued for infringement because they didn't want you to raise the issue of invalidity, right? They would have sued on the contract saying that you're foreclosed from raising invalidity. I don't know what they would have done, but that's a possibility. I guess what I'm going after here, and I don't want to take up a lot of time on this, but I'm trying to see whether normally you look for jurisdictional purposes to a question of what's the well-pleaded complaint raises. And in the case where there's a declaratory judgment, we ask what the coercive, the effective equivalent coercive action would be. And, of course, if the coercive action would simply be a suit on the contract against which you are defending by raising issues of patent invalidity, then presumably there wouldn't be jurisdiction in the district court under 1338 or in this court under our jurisdiction of a patent claim. Your Honor, I think they had already written us and told us the license had expired. We had not paid royalties for quite some time. Right, so they were about to sue you on the license. He said the license had expired. They said you had breached the license. You had breached the license and your license was canceled. Right, and they would have sued on the license. I think probably could have or would have. I don't know that. So what is it that turns this into a patent case? You understand what I'm saying. Yeah, okay. Basically, Your Honor, it turns into a patent case for these reasons way back, going back to the original settlement time, and that's our third point, the issue of did we have a fair and full opportunity to litigate here. That issue, Your Honor, turns on what Dow did in misrepresenting data and in effect coming to Pactive and saying, Tenneco at the time, saying here's our expert report. This supports validity, et cetera. We then took it and got out of the case. Subsequently, that data turned out to be fabricated, and after we came up here and, Your Honors, affirmed for ABI that the isobutane patents were invalid, they went back down. And the only issue remaining in that case was unenforceability. And prior to the trial in that case, Dow settled with ABI, and that's the 2002 agreement. And in that settlement, Dow paid in excess of a million dollars to have the case go away. Now, that whole issue of the full and fair opportunity undercuts the res judicata effect of the case below we submit. And we should have the opportunity to explore that and go into the issue of whether or not Dow, in fact, did that and was there a misrepresentations at that time in getting us to settle the case. So there's a lot of issues as to why we have the right to bring an authority to a judgment action. You seem to have given up that issue in the course of the oral hearing here. As I read the response to the district court, you say that the sole question here is the contract question. I don't believe that's accurate, Your Honor, because it was raised by Dow in their initial memorandum. Well, it was potentially raised in the memorandum. But by the time you got to the oral hearing, I understand the response was for the judge to be limiting the contentions that you're making. No, I don't think so, Your Honor. I think that's taking that out of context. The discussion at that time with Mr. Perry was specifically as to the express reservation. It was a binary situation. If I say this, you go up to the second circuit is what he said. If I say this, you continue with your case. Is that correct? And he said that's correct. But both Mr. Lieberman and Mr. Perry, Mr. Lieberman opened up his oral argument with a discussion of fraud and said, Fraud here six years later doesn't count. And Mr. Perry, coming back in his argument when he opened up in the court of law, said, I'd like to go into the six-year issue. Then they got into express reservation. It was briefed in our server by-law. It was briefed in our opposition. Where do I find that the so-called fraud issue was argued at this oral argument? The argument before the court, it's at appendix 33, Mr. Lieberman. And it's at A38 where Mr. Perry addresses the six-year issue. Mr. Lieberman, he says, what can upset a res judicata bubble? And he says, fraud is not even acceptable. The leading case in the circuit is Finn's fee book. Even fraud is insufficient. It might be sufficient if it happened within a year. This is six years later. This is five years after the testimony. I'm not going to get into the testimony. It's not relevant. On page 38, Mr. Perry says, with respect to the six years, and he's talking about fraud, that Mr. Lieberman refers to, I submit that the time between the 1988 signing of the agreement, and then they go on and he talks about it's not a relevant time period. And he says the relevant time period is when Packett became aware of the facts. And then he went into the issue of what happened in the period from 98 to 99 to 2000. And then I see you in my puddle. Go ahead. So fraud was never given up. If you want to call it fraud, we don't call it fraud. The ability to have a full and fair opportunity to explore those issues was never given up at all. It was briefed. They said we had ample opportunity to explore it and had ample opportunity to participate in the case. We pointed to the TUSIM data in our response, our opposition brief below, and we put it in. They came back in theirs, and we put it into our SOAR plot. It's never been given up. That's a red arrow. And we're asserting it here on the field. So under 12b-6, the judge did not have the right, under the Connolly decision, to go into what the intent of the parties did. If there was an intent issue, it had to be a hearing. It had to be a fully developed Rule 56 case. Under express reservation, we say we expressly reserved it. It definitely didn't say the only way these patents can be invalidated is by a third party. And that is an express statement that there was no reservation. In all of this court's jurisprudence, in the cases where there have been express reservations, this court has never said you have to put expressly in there, we reserve all rights. Why doesn't this have to be a fraud claim that has to be completed with particularity? I mean, it strikes me that what you're saying is that the agreement should be set aside because they withheld these documents in the course of discovery. That could be another complaint that we have, another cause of action. But in the context of this case, where it stands now, we're saying that they're arguing res judicata. We're saying res judicata doesn't apply because one of the criteria for res judicata is you have a full opportunity to participate in the litigation. We did not have that as a character. They're arguing that the settlement agreement is binding on you. Pardon? They're arguing that the settlement agreement forecloses this claim. Well, and we're saying that the settlement agreement was potentially... But if we were to say that they're right about the settlement, just hypothetically, that the settlement agreement forecloses this claim, the only way you could get around that would be to say that the settlement agreement should be set aside on the grounds of fraud. I'm not sure it goes as far as fraud. I think it goes as far as there's a lesser standard. Perhaps fraud would also do that, but there's a lesser standard, i.e. we did not have the opportunity for a full and fair time in the lower court. And that is directly related to res judicata, i.e. the consent decree was obtained and the settlement agreement was obtained improperly by misrepresentations. All right. Thank you, Mr. Tobin. We'll give you back the rebuttal time you sought to reserve since we questioned you so much. Mr. Lieberman.  Good morning. Good morning, Your Honor. Not only must fraud be pled with particularity, but it must be pled. There is no pleading in this case anywhere of fraud, nowhere. So beyond particularity, it must be pled. Then it must be pled somewhere within the time limitation. To avoid that, counsel says we never got a full and fair hearing. Why? Because Dow committed fraud. Where's the allegation? There is no allegation. There's no allegation, and it is time-barred. The documents say they were fabricated. There's no proof of fabrication. There was never any proof of fabrication. They have a full record to look at now. They look at the entire record, and they pick out what they choose because they've had six years to look. It could have been anything in any document anywhere. We never got a full and fair hearing, Your Honors, because of fraud. There is no other claim that I know of. If you want to set aside a contract, it's fraud in the inducement. If it's fraud before the patent office, which is a separate issue, that was before them when they settled. If they wanted to reserve this, when those documents were asked for, they asked for scads. We said you're either going to settle, or you can look for documents in continued discovery. They could have reserved specifically those documents. They didn't choose to do that either. So where are they? If we were to affirm here, you say the fraud issue is not in this case, could they start another case alleging fraud? They can't start another case alleging fraud seven, eight years later? Well, I mean, I understand you have arguments that substantial limitations is wrong, but the judgment in this case wouldn't foreclose them from starting again, right? Judge, they couldn't be foreclosed from the coffee was too hot and fell in my lap. They couldn't be foreclosed because you kicked me seven years ago. There is no way from foreclosing a litigant except to look at statutory rights which preclude after a certain passage of time. There's another issue. The other issue, where's their due diligence? They claim that they asked for documents and they weren't given the documents. Let's not talk about whether they were fraudulent or not. You didn't get the documents. Don't settle. Don't settle. But they knew they didn't get the documents six years ago. What then is the due diligence that the Supreme Court asked for when they knew or should have known? They had the right to ask for those documents and say, we're not settling this case unless you give us those documents. Or, let's accept the documents from the settlement and we'll go on. If we can never prove it's fraud, that's your problem. They could have done all of those things. They did none of them. They didn't even plead it. With respect to the first part of the case where you said, I can understand implied. I thought that was an unusual comment. It's not expressed, but I can understand implied. Your Honor, contracts have clauses. And the other clauses have to be considered in order to determine what the implication of the contract was. They gave up that right five different times to claim the invalidity. They gave it up when they settled with prejudice. They gave it up when they met with the judge and agreed that the case would be settled with prejudice and it was so ordered. They gave it up with full mutual releases. They gave it up when the releases had language that was said unsuspected or unanticipated that it contemplates. Here's some very interesting language in that settlement. This agreement contemplates the extinction of all claims. All claims between these two parties. And finally, Pactiff agrees not to assert or permit to be asserted against doubt any and all claims, actions, causes of actions, etc. All in the release agreement. You've got to take that into consideration when you take into consideration a paragraph that talks about invalidity. Now, it's known among patent attorneys that you put that in contracts simply if third parties have it found invalid. And that would be constraining on doubt. It would have been a better choice of language. It would have been a better choice of language. You're absolutely right. Let me ask you something. I'm sorry, I'm sorry. Well, I like you. I like you. I can tell you how to say it. I can tell you how to say it. You have no reservations, I take it, about the issue of this court's jurisdiction or the jurisdiction of the district court? There was, and we raised it. I don't know that the proper venue in this case would be there. Where you are now, you're not continuing to press that. I'm trying to sort this issue out because of the complication added by the fact that there's a declaratory judgment. On the other hand, there's a question of whether the contract gave a right to bring such an action and therefore, is this case really a contract action in reverse or is it a patent suit? Judge Bison raised an interesting question. The point is that if I concede a jurisdiction, I can't concede jurisdiction. You don't have any. I could not concede. No, but I'm looking for help. I will not raise jurisdiction as an issue. Right, but could you help, since we have to look at it. Well, if they're going to bring a case. Help us try to sort it out. Yes, if they're going to bring a parenteral case saying I'm not waiting for this contract to hit me, you've given me notice, okay? There's only one thing I can do. These royalties are horrendous. I've got to stop paying them somehow. Therefore, let me raise validity. Let me look and see if I can find in this agreement anything which would permit me to do so. And if I raise invalidity, then I have to do it here. Isn't your answer to Judge Bison's question that the suit here was a declaratory judgment for non-infringement rather than a declaratory judgment that the contract didn't bar such a thing? Yes, that is the case, exactly. Well, you were not going to sue for infringement. No, we would sue under the contract. You would sue under the contract. Yes, and then they would try to defend on that basis. And then we would turn up the settlement agreement and say you have foreclosed. Right. You don't have that defense any longer. Pay them up. Well, I don't want to take up any more time on this. Well, Your Honor, I wish I had a great deal more arguments to put forward to this court. Because when I looked at this case in the beginning and every time I've looked at this case, I've reached the exact same conclusion. You need, by the how-go and the epic decisions, by a host of decisions of this court, you need an express reservation. It doesn't have to say I expressly reserve. Some lawyers would choose that language, some would not. But it certainly has to show its face where that reservation is expressed to them. A dismissal with prejudice, mutual releases, court ordered, you cannot find an express reservation in that language. If the language is too abrasive, then you find many times in agreements, I hereby grant the following. You see, the whole grant, and then taking away from the grant is the remainder of the agreement. That's not unusual in any agreement. No different disagreement than any other agreement, Your Honor. Excuse me. By the way, I note that counsel says that we refuse to produce the documents that he contends are fabricated. Contends are fabricated. We refuse to produce all documents, Your Honor. You want to settle? Settle. You want documents? We'll go forward with discovery. That gave him a free hand to go through that record after the case was over and settled and find anything he wanted and according to counsel for the other side, as I understand his brief, he could do so forever. There's no 60B. There's no due diligence. Thank you, Mr. Coburn. Rebuttal? Yes, Your Honor. We're back at the court again. Can I ask you, Mr. Coburn, to make sure I understand just what the implications of your position are from the perspective of the country. You're saying that on the day that you settled, if you settled in the morning, that you could have gone and got the dismissal signed and sealed and delivered. You could have gone in the afternoon and filed an action, declaratory judgment action, to have the patent declared invalid. That's correct. Without any change in circumstances, no other predicate. They settled the case for now, but not for good. They've gotten rid of that cause of action for the moment. That's correct. That's got to be the position. Your Honor was talking about the express reservation and the finality. The flip side of that, too, and again, I keep coming back to the procedural posture that we're in. This is a 12B6 motion. It's not a motion based on a completely expanded record of what was the intent of the parties, what were they trying to do, etc. It's a 12B6 motion. We searched for all of the jurisprudence from this Court. There's not one case that we could find, nor could Dow, that a 12B6 motion was defeated on res judicata. All of the cases, the closest we came to it, was a 12B6 case in advanced cardiovascular where it was a latches situation. And the argument was that latches barred the 12B6 complaint. And Judge Newman said, this is a 12B6 motion, and quoted the Connolly case, which is what we're relying upon, and said, such a motion cuts off a claimant at the threshold. This is in, it's in our brief. It's advanced cardiovascular versus Simon 988 Fed Second. It says it cuts, Judge Newman says, cuts off the claimant at the threshold. It must be denied unless it appears beyond a doubt, beyond a doubt, that the plaintiff can prove no set of facts in support of its claim, which would entitle him to relief. Now, then in the latches situation, Judge Newman says, in effect, this is a Rule 6, the Rule 56 motion, and we reverse and send it back to be developed as to what really was going on here. Was there latches or was there not latches? That's where we are. We are in a situation where it's a 12B6. The complaint was filed in January. April, there was a motion to dismiss under 12B6, and the argument was in June, and bam, the case was over, and here we are. And all you have is what we say is we had the opportunity to go back because we've made a reasonable presentation, a reasonable interpretation. It's certainly not beyond a doubt that the parties were reserving the right to litigate. And we say, under that situation, we're entitled to go back. Furthermore, the record, when you look at this 2002 agreement, that was where the ISO, that was where DAO wanted to get rid of the case finally against AVI and paid them over a million dollars to get rid of the concept of having an unenforceability trial. In that agreement, there's language specifically saying DAO and Pacted agree that both parties reserve their rights. Well, under that agreement. No, it didn't say that under that agreement. It says it reserves its rights. Now, that means there must have been rights reserved in 1998. And if they were reserving their rights even under the ISO-Butane Pact, it does not mean that those patents were no longer reserved. If you had rights in 1998 and you said, and you, as Mr. Lieberman goes and says, the Perth Patents were crossed out of the 2002 agreement, there's an acknowledgement there by DAO, at least, that there were rights back in the 1998 agreement. And they were reserving whatever rights they had. Now, the lower court just pushed that aside and said it's not even Perth anymore. The other issue which we think is important, the only jurisprudence on this, again, beyond Judge Newman, there's another advanced cardiovascular case in the Northern District of California where the judge on a 12C motion, which is both parties have put in their complaints or whatever, in that case the judge said, in looking at 12C and whether or not there was a reason to dismiss it on that basis, said with exact same language as we have here in a license agreement except in that case there was addition of the language third party. Now, Your Honor, you were asking about what could be more explicit. It could be more explicit if you had in there if the license is, if the patents are declared invalid or unenforceable by a third party. And the judge there said that in this situation I cannot make a decision now without the record being developed because it's a 12C motion. It could mean this, it could mean that, but I can't do it now. But that is an entirely different claim as it's called in the case. That was with respect, it was a whole new lawsuit with respect to a whole new product and the consequence of saying that you've given up your rights in the settlement of the first case would be that no matter when we sue you on whatever product under this patent you can't raise invalidity of that patent, even if it's with respect to a totally different product a different claim altogether. We're not arguing that the advanced cardiovascular is the same issue. No, and it seems to me so different that the language you cite for, has really no significant application here. You may be right, but I don't think you're right because of that case, to put it that way. Well, I was looking at a 12C motion which is very much similar to 12B6 and saying, there's language in here that says third party, and even there I cannot determine it that way. Alright, we thank both counsel, we'll take the case under advice. I don't think rebuttal's in order, there's no cross-examination. I don't think we can permit it. We'll take the case under advice. Thank you. The next and final argument is appeal number 05.